UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>LARRY PRESSLEY,<br><br>Defendant. | Case No.  CR12-318RSL<br><br>ORDER DENYING MOTIONS TO SUPPRESS |

## I. INTRODUCTION

This matter comes before the Court on defendant's "Motion to Suppress Statements of Defendant," Dkt. # 28, "Motion to Suppress Evidence from Warrantless Search of Defendant's House," Dkt. # 30, and "Motion to Suppress Identification of Firearms," Dkt. # 31.  Having reviewed the memoranda, declarations, and exhibits submitted by the parties and having considered the evidence and arguments presented during the hearing on April 30, 2013, the Court finds as follows:

## II. DISCUSSION

**A. Background**

   **1. Defendant's Arrest**

While defendant was serving an unrelated state criminal sentence at the Washington State Penitentiary in Walla Walla, Washington, the government filed a complaint against him alleging two counts of felon in possession of a firearm as an

ORDER DENYING MOTIONS TO SUPPRESS - 1

armed career criminal.[1]  Dkt. # 1.  That same day, an arrest warrant was issued.  Dkt. #2.  Approximately one week later, a magistrate judge issued a writ of habeas corpus ad prosequendum to transfer defendant from the Washington State Penitentiary to the United States District Courthouse in Seattle, Washington.  Dkt. # 4 at 1.  The arrest warrant was returned on October 5, 2012, indicating it was executed on October 2, 2012.  Dkt. # 5.  Defendant made his initial appearance in Seattle on October 10, 2012, Dkt. # 6.  The day before his initial appearance, defendant spoke to two Federal Bureau of Investigation ("FBI") agents who visited him at the Federal Detention Center ("FDC") in Seatac, Washington.  During their conversation, defendant made statements that he now seeks to suppress.  Dkt. # 28 at 2.

**2. Post-Arrest Search of Defendant's House and Subsequent Investigation**

In December 2011, Washington State Department of Corrections ("DOC") Community Corrections Specialist Scott Lee ("Lee") received reports that defendant and his wife, Dawnica Laird ("Laird"), were committing burglaries and storing firearms and ballistic vests at their home in Concrete, Washington.  Lee also learned that Laird recently tested positive for multiple kinds of illegal drugs.  Dkt. # 1 ¶ 6; Dkt. # 30 at 2.  Laird was under DOC supervision at the time as a result of prior felony convictions.  Dkt. # 1 ¶ 5.  After defendant was taken into state custody in January 2012, Lee received additional reports that Laird was carrying a firearm and storing it in her house.  Dkt. # 1 ¶ 7.

Based on these reports, Lee believed that Laird was violating the conditions of her supervision.  He decided to arrest Laird and authorize the search of her car and house.  On January 20, 2012, Lee followed Laird in her car from her house in Concrete to Sedro Woolley, Washington.  Id. ¶ 9.  Laird was stopped in Sedro Woolley and

---

[1] Since that time, the government has filed a Superseding Indictment alleging two counts of possession of a firearm as a career criminal and one count of possession of ammunition as a career criminal.  Dkt. # 40.

ORDER DENYING MOTIONS TO SUPPRESS - 2

arrested for violating the conditions of her supervision and for driving without a license. Id.; Dkt. # 30 at 2. When Lee told Laird that officers were going to search her house, she told Lee that she had been staying at friend's home in Sedro Woolley since defendant's arrest. She said she returned to the Concrete house to take care of her dogs. Dkt. # 1 ¶ 10.

Later that day, Lee and another DOC Community Corrections Officer searched the Concrete house while Laird was present. Id. ¶ 11. They entered the house using a key Laird gave them. Dkt. # 30 at 3. During the search, officers seized two handguns, ammunition, a set of body armor and some drug paraphernalia. Id.; Dkt. # 1 ¶ 11.

FBI agents subsequently interviewed several witnesses who reported that they had seen defendant with a firearm. Dkt. # 1 ¶¶ 15-23. Some of these witnesses saw defendant with one firearm and others saw that he had two in his home. Id. During these interviews, the government showed the witnesses pictures of one or both guns that the witnesses described. Dkt. # 30 at 2-4; Dkt. # 1 ¶¶ 15-23.

**B. Analysis**

**1. Statements**

Defendant seeks an order suppressing the statements he made to the FBI agents on October 9, 2012 at the FDC under the McNabb-Mallory rule, Dkt. # 28 at 2-6, which "generally renders inadmissible confessions made during periods of detention that violate the prompt presentment requirement of Rule 5(a)." United States v. Redlightning, 624 F.3d 1090, 1106 (9th Cir. 2010) (quoting Corley v. United States, 556 U.S. 303, 309 (2009)). Rule 5(a) requires a person making an arrest in the U.S. to take the defendant "without unnecessary delay before a magistrate judge." Fed. R. Crim. P. 5(a). In 1968, Congress enacted 18 U.S.C. § 3501(c), which created a safe-harbor for confessions obtained within six hours of arrest, so long as the confession was made

ORDER DENYING MOTIONS TO SUPPRESS - 3

voluntarily and the weight of the confession is left to the jury. United States v. Garcia-Hernandez, 569 F.3d 1100, 1104 (9th Cir. 2009).

In response, the government argues that there was no delay under Rule 5(a) because the execution of a writ of habeas corpus ad prosequendum does not constitute an arrest. Dkt. # 38 at 4-6.

A writ of habeas corpus ad prosequendum allows a federal authority to obtain temporary custody of a prisoner without acquiring jurisdiction, for indictment, prosecution, and sentencing of the prisoner. Jake v. Herschberger, 173 F.3d 1059, 1062 n.1 (7th Cir. 1999). "When an accused is transferred pursuant to a writ of habeas corpus ad prosequendum he is considered to be 'on loan' to the federal authorities so that the sending state's jurisdiction over the accused continues uninterruptedly." Thomas v. Brewer, 923 F.2d 1361, 1367 (9th Cir. 1991) (quoting Crawford v. Jackson, 589 F.2d 693, 695 (D.C. Cir. 1978)). The state retains primary jurisdiction over the defendant. Taylor v. Reno, 164 F.3d 440, 444 (9th Cir. 1998).

Based on the temporary nature of this federal custody, the execution of a writ does not constitute either an arrest or a summons. United States v. Kelly, 661 F.3d 682, 687 (1st Cir. 2011) (a writ of habeas corpus ad prosequendum does not trigger Speedy Trial Act's 30-day arrest-to-indictment requirement); United States v. Johnson, 953 F.2d 1167, 1170, 1172 (9th Cir. 1992) (same). Thus, although federal marshals transported defendant from the Washington State Penitentiary to the district court, the Court finds that defendant remained in state custody until he was delivered to district court pursuant to the writ on October 10, 2012.

The marshal's mistake in closing the arrest warrant does not alter the Court's finding. The writ commanded the Washington State Penitentiary to produce defendant at the United States District Courthouse in Seattle, Washington, at 9:00 a.m. on Friday, October 12, 2012. Dkt. # 4 at 1. Defendant was transported quicker than anticipated

ORDER DENYING MOTIONS TO SUPPRESS - 4

1  and made his first appearance in relation to the federal charges on October 10, 2013.
2  Federal authorities obtained temporary custody of defendant pursuant to the writ when
3  defendant appeared in district court.
4        Having found the McNabb-Mallory rule inapplicable to defendant's statements,
5  the Court turns to defendant's argument that his Miranda rights were violated. Dkt. # 28
6  at 6. Miranda v. Arizona requires that before law enforcement officers may question a
7  suspect in custody, the suspect must be warned that he has the right to remain silent, that
8  any statement he makes can and will be used against him, that he has the right to have
9  counsel present during the questioning, and that if he cannot afford a lawyer, one will be
10  appointed to represent him. 384 U.S. 436, 467-73 (1966). After a suspect is advised of
11  his rights, he may waive these rights and respond to police questions. North Carolina v.
   Butler, 441 U.S. 369, 372-76 (1979).
12        To determine whether a suspect's waiver was voluntary, the Court considers the
13  totality of circumstances. United States v. Harrison, 34 F.3d 886, 890 (9th Cir. 1994).
14  The Court must determine "whether the government obtained the statement by physical
15  or psychological coercion or by improper inducement so that the suspect's will was
16  overborne." Id. (quotations and citations omitted). The inquiry regarding waiver has
17  two dimensions: "waiver must be voluntary in the sense that it was the product of a free
18  and deliberate choice rather than intimidation, coercion, or deception, and made with a
19  full awareness of both the nature of the right being abandoned and the consequences of
20  the decision to abandon it." Berghuis v. Thompkins, - - - U.S. - - -, 130 S.Ct. 2250,
21  2260 (2010) (quotations and citation omitted). An accused's waiver need not be express
22  and may be implied where the prosecution shows that Miranda warnings were given, an
23  accused understood his rights, and an accused later made an uncoerced statement. Id. at
    2262.
24        The totality of circumstances indicates that defendant's waiver was knowing and
25  voluntary. First, FBI Agent Maron testified that he read defendant his Miranda rights
26  ORDER DENYING MOTIONS TO SUPPRESS - 5

and defendant indicated that he understood them.  Second, defendant signed a waiver form acknowledging that his waiver was knowing and voluntary.  Finally, defendant does not allege that his statements were the product of coercion.  The Court, therefore, DENIES defendant's motion to suppress his statements.

**2. Evidence Obtained During Warrantless Search**

Defendant also seeks suppression of evidence seized during the warrantless search of his house after his arrest.  He contends that this evidence should be suppressed because DOC Community Corrections Specialist Lee did not obtain a search warrant, despite ample time to do so, and the warrantless search was not justified under RCW 9.94A.631.[2]

Although "the informed and deliberate determinations of magistrates empowered to issue warrants as to what searches and seizures are permissible under the Constitution are to be preferred over the hurried action of officers," Georgia v. Randolph, 547 U.S.103, 117 (2006) (quoting United States v. Lefkowitz, 285 U.S. 452, 464 (1932)), a warrantless search of a probationer's home based on reasonable cause that the probationer has violated a condition of his or her sentence satisfies the Fourth Amendment's reasonableness standard.  Griffith v. Wisconsin, 483 U.S. 868. 872-73 (1987); United States v. Conway, 122 F.3d 841, 842 (9th Cir. 1997).  Because Laird was on probation for crimes committed in Washington, Lee was not required to seek a warrant before conducting a search of her home so long as there was reasonable cause to believe that she violated the conditions of probation.

Reasonable cause or reasonable suspicion "requires specific and articulable facts and rational inferences." State v. Parris, 163 Wn. App. 110, 119 (2011).  In addition to having reasonable cause to believe that a probationer has violated the conditions of his

---

[2] Defendant attempts to incorporate DOC policies on forced entry searches into the interpretation of what Washington law is and whether the search complied with the statute.  This is not appropriate.  Griffin, 483 U.S. at 880 n.8.

ORDER DENYING MOTIONS TO SUPPRESS - 6

or her probation, Washington law requires that probation officers have probable cause to believe that the probationer lives at the residence they seek to search. State v. Winterstein, 167 Wn.2d 620, 630 (2009). "[P]robable cause exists when an officer has information that would lead a person of reasonable caution to believe that the probationer lives at the place to be searched." Id.

The Court finds that there was reasonable suspicion that Laird had violated the conditions of her probation and there was probable cause that she lived at the Concrete house searched by probation officers. Lee received reports from both Skagit County Sheriff's Deputy Fred Harrison and DOC Officer Richard Burton that Laird was in possession of firearms. The detailed descriptions of the firearms and the reliable nature of the officers' sources of information were sufficient to create reasonable suspicion that Laird was violating the conditions of probation.

Similarly, Lee had probable cause to believe that Laird lived at the house he searched. Lee relied on information from Laird's DOC supervisor, Cherie Banks, that Laird's primary address was the house in Concrete, Washington. Laird was present at this residence when Banks performed home visits in October and November 2011 and Laird recently told Banks that she was stranded at this house due to a recent snowstorm. Although Lee was aware that Laird had been staying with a friend in Sedro Woolley recently, there was no indication that she had changed her primary residence. Defendant's motion to suppress evidence is DENIED.

**3. Identification of Firearms**

Finally, defendant asks the Court to suppress evidence related to the witnesses' identifications of firearms because the witnesses were shown single photographs of the firearms in defendant's home regardless of whether they reported seeing one or both of the firearms in defendant's possession or whether they provided accurate descriptions of the firearms. Dkt. # 31 at 4-5. Defendant concedes that his due process right to reliable pretrial identification procedures is inapplicable to physical evidence, but he nonetheless

ORDER DENYING MOTIONS TO SUPPRESS - 7

argues that the Court should exclude this evidence under Federal Rule of Evidence 403 due to the suggestive manner in which the photographs were shown to the witnesses. Id. at 5.

Despite defendant's contention to the contrary, the Court finds that the probative value of the firearm identifications is not outweighed by a danger of unfair prejudice. See Fed. R. Evid. 403. The interviews of the witnesses and the identification process were not unduly suggestive. Only after the witnesses reported seeing defendant with firearms and described the firearms accurately were they shown the pictures of the firearms recovered from defendant's house. The Court does however find it troubling that the pictures showed the firearms in defendant's house. However, that detail is insufficient to warrant suppression of evidence related to the identifications in light of the witnesses's prior descriptions of the guns. Furthermore, the manner in which the witnesses identified the firearms and the consistency of their statements goes to the weight of the evidence, not its admissibility. Thus, the Court DENIES defendant's motion to suppress evidence related to witness identifications of the firearms.

## III. CONCLUSION

For all of the foregoing reasons, defendant's motions to suppress (Dkt. # 28, 30, 31) are DENIED.

DATED this 3rd day of May, 2013.

Robert S. Lasnik
United States District Judge

ORDER DENYING MOTIONS TO SUPPRESS - 8